[No. 48346–9.   En Banc.   May 24, 1984.]

THE STATE OF WASHINGTON, *Respondent*, v. DWAYNE EARL BARTHOLOMEW, *Appellant*.

*Timothy K. Ford* and *Douglas Tufts,* for appellant.

*William H. Griffies, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Chief Criminal Deputy,* for respondent.

PEARSON, J.—Defendant Dwayne Earl Bartholomew was convicted of aggravated first degree murder and received a sentence of death in December 1981. On automatic review, pursuant to RCW 10.95.100, we affirmed the conviction, but reversed his sentence when we found portions of the capital punishment statute in violation of the Eighth and Fourteenth Amendments. The United States Supreme Court granted a writ of certiorari, vacated our judgment found in *State v. Bartholomew,* 98 Wn.2d 173, 654 P.2d 1170 (1982), *defendant's cert. denied,* 103 S. Ct. 3548 (1983), and remanded the case for reconsideration in light of *Zant v. Stephens,* ___ U.S. ___, 77 L. Ed. 2d 235, 103 S. Ct. 2733 (1983). The facts in this case are adequately set forth in *State v. Bartholomew,* 98 Wn.2d at 177–80.

## I

## A

We first consider whether provisions of the capital punishment statute, RCW 10.95, remain invalid under the United States Constitution after reconsideration in light of *Zant v. Stephens.* Our prior decision modified the death penalty statute in three significant ways.

First, the portion of RCW 10.95.060(3) that authorizes the admission of evidence of a defendant's prior criminal activity (other than convictions) is inconsistent with the Eighth Amendment standards we have articulated. Therefore, we invalidate the provision authorizing the admission of "evidence of the defendant's previous criminal activity regardless of whether the defendant has been charged or convicted as a result of such activity." That portion of the statute may be severed without affecting the validity of the remainder of the statute. RCW 10.95.900.

Second, the remaining provisions in RCW 10.95.060 and the provisions of RCW 10.95.070 must be construed subject to the Eighth Amendment strictures we have identified in this opinion. Specifically, the liberal authority provided by RCW 10.95.060(3) to receive "any relevant evidence" must be limited to mitigating evidence only. Similarly, the jury's liberal mandate under RCW 10.95.070 to consider "any relevant factors" shall be lim-

ited to mitigating factors only. The admission of evidence of aggravating factors and consideration by the jury of aggravating factors must be restricted to maintain the constitutionally required channeled discretion. Specifically, evidence of nonstatutory aggravating factors must be limited to defendant's criminal record and such evidence of additional nonstatutory aggravating factors as may be admitted by the court pursuant to the balancing test set forth above.

Finally, the provision in RCW 10.95.060(2) that the prosecution shall be allowed to make an opening statement and shall first present evidence must be limited in accordance with this opinion. This means that in most cases the only evidence with which the prosecution may open is defendant's criminal record. In the event that the sentencing jury is not the jury which convicted defendant of aggravated first degree murder, the prosecution may in addition present evidence of the facts and circumstances of the murder, as provided by the second paragraph of RCW 10.95.060(3).

98 Wn.2d at 198–99.

We based this prior decision on our interpretation of the Supreme Court's decisions interpreting the Eighth and Fourteenth Amendments, and establishing procedural requirements in capital punishment cases. *Jurek v. Texas,* 428 U.S. 262, 49 L. Ed. 2d 929, 96 S. Ct. 2950 (1976); *Gregg v. Georgia,* 428 U.S. 153, 49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976); *Furman v. Georgia,* 408 U.S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726 (1972). The question before us, then, is whether *Zant v. Stephens* mandates a different result than our prior decision in this case. We hold that it does not.

In *Zant v. Stephens,* a Georgia state court found the defendant guilty of murder and imposed the death penalty. Under the Georgia capital punishment statute, a jury must find that at least one statutory aggravating circumstance has been proved beyond a reasonable doubt before it can sentence someone to death. 103 S. Ct. at 2737. At the sentencing phase of the trial, the jury designated in writing the three statutory aggravating circumstances it found. 103 S. Ct. at 2737–38. One of the aggravating circumstances the

jury found was that the defendant had "'a substantial history of serious assaultive criminal convictions'". 103 S. Ct. at 2738. While the defendant's appeal was pending before the Georgia Supreme Court, that court held in another case that the statutory aggravating circumstance—a substantial history of serious assaultive criminal convictions—was unconstitutionally vague. *Arnold v. State,* 236 Ga. 534, 539–42, 224 S.E.2d 386 (1976). In the defendant's appeal, the Georgia Supreme Court considered whether this finding impaired the defendant's death sentence. The Georgia court concluded that the two other aggravating circumstances found by the jury adequately supported the sentence. The question before the United States Supreme Court was whether the invalidation of one of the multiple statutory aggravating circumstances found by a jury in imposing the death penalty requires that the sentence must be invalidated under the Eighth Amendment.

In its decision affirming the Georgia court, the Supreme Court clarified the constitutional requirements that statutory aggravating factors must meet:

> [A]n aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.

(Footnote omitted.) 103 S. Ct. at 2742–43. Aggravating factors serve such a narrowing function under the Washington statutory scheme. The Washington capital punishment statute differs from the Georgia statute considered in *Zant v. Stephens* in that the Washington scheme requires the consideration of aggravating factors at the guilt determination phase, rather than at the sentencing phase as required by the Georgia statute. Under the Washington statute, of that class of persons guilty of first degree murder, the jury may consider the death penalty only if one of the aggravating circumstances set forth in RCW 10.95.020 is also found to exist. This genuinely narrows the class of persons subject to the death penalty as constitutionally required.

The Court in *Zant v. Stephens* went on to indicate that a jury's consideration of nonstatutory aggravating factors will not render a death sentence unconstitutional:

> [S]tatutory aggravating circumstances play a constitutionally necessary function . . . But the Constitution does not require the jury to ignore other possible [nonstatutory] aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death.

(Footnote omitted.) 103 S. Ct. at 2743. This statement is of some significance to our prior decision. Prior to *Zant v. Stephens* and at the time of our prior decision, constitutional limits placed on the admission of aggravating factors in capital cases were an open question. In our prior decision we noted that *Eddings v. Oklahoma,* 455 U.S. 104, 71 L. Ed. 2d 1, 102 S. Ct. 869 (1982), *Lockett v. Ohio,* 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954 (1978), and other recent Supreme Court decisions require the admission of nearly all mitigating information proffered by a defendant at a capital sentencing hearing. 98 Wn.2d at 194-95. We also noted that "[w]hile such liberal reception of mitigating information is mandated by *Lockett v. Ohio,* et al, the Court has not yet considered specifically whether the same principles apply to aggravating factors." 98 Wn.2d at 194-95.

In a limited way, *Zant v. Stephens* answers the question as to limits the constitution places on the prosecution's presentation of nonstatutory aggravating factors at the sentencing phase of a capital case. According to the Supreme Court, the sentencing jury may consider nonstatutory aggravating factors. However, the Court in *Zant v. Stephens* does not say that nonstatutory aggravating factors should have the same liberal reception as mitigating information proffered by the defendant. There remain several federal and state constitutional limits on the admission of evidence of such aggravating factors. These federal and state constitutional requirements mandate the same results reached in our prior decision.

The first of these federal constitutional standards which support our prior decision is that evidence prejudicial to the defendant must not be admitted at the sentencing phase. In its recent decisions in *Zant v. Stephens* and *California v. Ramos,* ___ U.S. ___, 77 L. Ed. 2d 1171, 103 S. Ct. 3446 (1983), the Court acknowledged this "prejudice" standard by noting the following quotation from *Gregg v. Georgia,* 428 U.S. 153, 203–04, 49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976):

> We think that the Georgia court wisely has chosen not to impose unnecessary restrictions on the evidence that can be offered at such a hearing and to approve open and far–ranging argument. . . . *So long as the evidence introduced and the arguments made at the presentence hearing do not prejudice a defendant,* it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision.

(Italics ours.) *See Zant v. Stephens,* 103 S. Ct. at 2748; *California v. Ramos,* 103 S. Ct. at 3457 n.23.

Although the Court has cited this quotation from *Gregg* in the past, it has failed to explain how the concept of prejudice operates in the unique context of a capital sentencing procedure. Likewise, *Zant v. Stephens* and other recent Supreme Court decisions have failed to clarify this concept. Nevertheless, faced with a death penalty statute, provisions of which we find offensive under the Eighth Amendment, Fourteenth Amendment, and our state constitution, we cannot wait for the Supreme Court to clarify this concept. It is our opinion that this "prejudice" concept subjects the prosecution to a more stringent standard than that of the defendant at the sentencing phase of a capital case. As we noted in our prior decision:

> Conceivably, any aggravating information could be said to prejudice a defendant, but presumably the Court intended to restrict the concept to undue or unreasonable prejudice. At the very least, the Court's recognition that a defendant may be prejudiced by the reception of information at his sentencing suggests that different criteria

apply to aggravating factors than apply to mitigating factors.

98 Wn.2d at 195. The Court's decision in *Zant v. Stephens* says nothing which contradicts this conclusion from our prior decision.

Another standard for the admission of aggravating evidence comes from our reading of the Supreme Court's decision in *Gardner v. Florida,* 430 U.S. 349, 51 L. Ed. 2d 393, 97 S. Ct. 1197 (1977). In *Gardner,* a Florida court sentenced a defendant to death, basing its decision in part on a sentencing report prepared by probation officers but never disclosed to the defendant. In overturning the defendant's death sentence, the Court noted the need for accurate and reliable information at the sentencing phase of capital cases.

It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion.

. . .
. . . [C]onsideration must be given to the quality, as well as the quantity, of the information on which the sentencing judge [or jury] may rely. . . .

If, as the State argues, it is important to use such information in the sentencing process, we must assume that in some cases it will be decisive in the judge's choice between a life sentence and a death sentence. If it tends to tip the scales in favor of life, presumably the information would be favorable and there would be no reason why it should not be disclosed. On the other hand, if it is the basis for a death sentence, the interest in reliability plainly outweighs the State's interest in preserving the availability of comparable information in other cases.

430 U.S. at 358–59 (plurality opinion).

These recent decisions of the Supreme Court persuade us that except for the broad exclusion of all nonstatutory aggravating circumstances as set forth in our prior decision, we were not in error under federal constitutional analysis in striking down the portion of RCW 10.95.060(3) which allows the jury to consider

any relevant evidence which it [the court] deems to have probative value *regardless of its admissibility under the rules of evidence, including hearsay evidence and evidence of the defendant's previous criminal activity regardless of whether the defendant has been charged or convicted as a result of such activity.*

(Italics ours.)

Nevertheless, if we are in error in our consideration of these federal decisions, as the dissent suggests, we do not hesitate to hold that those portions of RCW 10.95.060(3) quoted above are offensive to article 1, sections 3 (due process) and 14 (cruel punishment) of the Washington State Constitution.

## B

We note that our interpretation of the due process and cruel punishment clauses of our state constitution is not constrained by the Supreme Court's interpretation of the Eighth and Fourteenth Amendments. We have, in the past, interpreted Const. art. 1, § 14 to provide broader protection than the Supreme Court's interpretation of the Eighth Amendment. *State v. Fain,* 94 Wn.2d 387, 617 P.2d 720 (1980). Additionally, in interpreting the due process clause of the state constitution, we have repeatedly noted that the Supreme Court's interpretation of the Fourteenth Amendment does not control our interpretation of the state constitution's due process clause. *Olympic Forest Prods., Inc. v. Chaussee Corp.,* 82 Wn.2d 418, 511 P.2d 1002 (1973); *Petstel, Inc. v. County of King,* 77 Wn.2d 144, 459 P.2d 937 (1969).

As we recently stated in *State v. Chrisman,* 100 Wn.2d 814, 817–18, 676 P.2d 419 (1984):

The federal constitution only provides minimum protection of individual rights. Accordingly, it is well established that decisions from the federal courts "do not limit the right of state courts to accord . . . greater rights." *State v. Hehman,* 90 Wn.2d 45, 49, 578 P.2d 527 (1978); *State v. Fitzsimmons,* 94 Wn.2d 858, 859, 620 P.2d 999 (1980); *Federated Publications, Inc. v. Kurtz,* 94 Wn.2d 51, 56, 615 P.2d 440 (1980); *see also Pruneyard Shopping*

*Ctr. v. Robins,* 447 U.S. 74, 81, 64 L. Ed. 2d 741, 100 S. Ct. 2035 (1980); *Oregon v. Hass,* 420 U.S. 714, 719, 43 L. Ed. 2d 570, 95 S. Ct. 1215 (1975); *see also* Brennan, *State Constitutions and the Protection of Individual Rights,* 90 Harv. L. Rev. 489 (1977); Wilkes, *The New Federalism in Criminal Procedure: State Court Evasion of the Burger Court,* 62 Ky. L.J. 421 (1974), and cases cited therein.

█ █ We, therefore, hold that the due process and cruel punishment provisions of this state's constitution are offended by the provisions of RCW 10.95.060(3) in any case involving capital punishment by (1) allowing the introduction of any evidence regardless of its admissibility under the rules of evidence, including hearsay evidence, and (2) by allowing evidence of defendant's prior criminal activity regardless of whether defendant was charged or convicted as a result of such activity.

Since the death penalty is the ultimate punishment, due process under this state's constitution requires stringent procedural safeguards so that a fundamentally fair proceeding is provided. Where the trial which results in imposition of the death penalty lacks fundamental fairness, the punishment violates article 1, section 14 of the state constitution.

We deem particularly offensive to the concept of fairness a proceeding in which evidence is allowed which lacks reliability. The rules of this court concerning admissibility of evidence are premised on allowing evidence which is trustworthy, reliable, and not unreasonably prejudicial. *See* ER 403. The purpose of the rules of evidence is to afford any litigant a fair proceeding. *See* ER 102.

It makes no sense to afford these protections to one charged with a lesser crime but then suspend them in a capital case. We will not do so, for this would place a defendant facing the death penalty in the perilous position of having to rebut potentially unreliable or unreasonably prejudicial evidence before a jury that has already convicted him of aggravated murder. To suspend these protections which are afforded all other criminally charged

defendants at such a critical phase of a capital case is contrary to the reliability of evidence standard embodied in the due process clause of our state constitution. Const. art. 1, § 3.

We also find offensive to state due process the portion of RCW 10.95.060(3) which authorizes the admission of "evidence of the defendant's previous criminal activity regardless of whether the defendant has been charged or convicted as a result of such activity."

We note again that such evidence is rarely admissible in criminal trials except under limited circumstances. *See* ER 404(b). The reason for the restriction on this type of evidence is that it is usually highly prejudicial and of questionable relevance. *See* ER 403. Again, we decline to suspend in a capital case protections afforded all other criminal defendants. We adhere to the analysis from our prior decision regarding the admissibility of such evidence:

> Different considerations apply, however, where the prosecution seeks to put prior criminal activity other than convictions before the jury. Here, the element of prejudice looms larger. At least one court has held that allowing the jury to consider a previous murder, of which the defendant was accused but never convicted, was so prejudicial as to be a violation of due process. *State v. McCormick* [272 Ind. 272], 397 N.E.2d 276 [(1979)].
>
> To allow the jury which has convicted defendant of aggravated first degree murder to consider evidence of other crimes of which defendant has not been convicted is, in our opinion, unreasonably prejudicial to defendant. A jury which has convicted a defendant of a capital crime is unlikely fairly and impartially to weigh evidence of prior alleged offenses. In effect, to allow such evidence is to impose upon a defendant who stands in peril of his life the burden of defending, before the jury that has already convicted him, new charges of criminal activity. Information relating to defendant's criminal past should therefore be limited to his record of convictions.

98 Wn.2d at 196–97.

We conclude, as in our prior decision, that the portion of RCW 10.95.060(3) which allows the admission of such evi-

dence in a capital case violates article 1, sections 3 and 14 of the Washington State Constitution.

As in our prior opinion, we limit the prosecution's presentation of statutory and nonstatutory aggravating evidence at the sentencing phase in the following ways. First, the portion of RCW 10.95.060(3) that authorizes the admission of evidence of a defendant's alleged prior criminal activity (other than convictions) is inconsistent with the rules of evidence promulgated by this court and the state and federal constitutional standards we have articulated. Therefore, we invalidate the provision authorizing the admission of "evidence of the defendant's previous criminal activity regardless of whether the defendant has been charged or convicted as a result of such activity."

Second, the remaining provisions in RCW 10.95.060 and the provisions of RCW 10.95.070 must be construed subject to the rules of evidence and the state and federal constitutional strictures we have identified in this opinion. Specifically, the liberal authority provided by RCW 10.95.060(3) to receive "any relevant evidence" must be limited to mitigating evidence only. Similarly, the jury's liberal mandate under RCW 10.95.070 to consider "any relevant factors" shall be limited to mitigating factors only. The admission of evidence of aggravating factors and consideration by the jury of aggravating factors must be restricted to meet the evidentiary, and state and federal constitutional standards we have articulated. Specifically, evidence of nonstatutory aggravating factors must be limited to defendant's criminal record, evidence that would have been admissible at the guilt phase, and evidence to rebut matters raised in mitigation by the defendant. This rebuttal evidence must meet the following balancing test found in our prior decision:

> In our opinion, the prosecution should be entitled to produce information necessary to rebut mitigating evidence produced by defendant. Defendant's right to present mitigating evidence is limited only by the requirement of relevance. . . .

This holding will require the trial court to evaluate the

rebuttal evidence offered by the prosecution. Rebuttal evidence should be admitted only if it is relevant to a matter raised in mitigation by defendant. Evidence might be relevant, for instance, if it casts doubt upon the reliability of defendant's mitigating evidence. We do not intend, however, that the prosecution be permitted to produce any evidence it cares to so long as it points to some element of rebuttal no matter how slight or incidental. The court in determining whether to admit the prosecution's evidence should apply a balancing test similar to that contemplated by ER 403. The court must balance the extent to which the evidence tends to rebut defendant's mitigating information against the extent to which the evidence is otherwise prejudicial to defendant. Only if the rebuttal value of the evidence outweighs the prejudicial effect should the evidence be admitted.

98 Wn.2d at 197–98.

Third, to clarify a possible misunderstanding in our prior decision, the prosecution may present at the sentencing phase any evidence relating to the statutory aggravating factors set forth in RCW 10.95.020. Such evidence is admissible at the sentencing phase if it would have been admissible at the guilt phase of the trial.

Finally, the provision in RCW 10.95.060(2) that the prosecution shall be allowed to make an opening statement and shall first present evidence must be limited in accordance with this opinion. This means that in most cases the prosecution may open only with the defendant's criminal record and evidence which would have been admissible at the guilt phase of the trial. As noted in our prior opinion, in the event that the sentencing jury is not the jury which convicted the defendant of aggravated first degree murder, the prosecution may in addition present evidence of the facts and circumstances of the murder, as provided by the second paragraph of RCW 10.95.060(3).

The sentencing proceeding in which defendant in this case was sentenced to die was tainted by these constitutional flaws we have identified. Evidence was admitted of alleged criminal activity of which the defendant had not been convicted. Nonstatutory aggravating information was

not determined to be reliable as constitutionally required. Our decision rests on an interpretation of both the state and federal constitutions. However, the independent state constitutional grounds we have articulated are adequate, in and of themselves, to compel the result we have reached. *See Michigan v. Long*, __ U.S. __, 77 L. Ed. 2d 1201, 103 S. Ct. 3469 (1983). Therefore, any decision by the Supreme Court limiting federal constitutional guaranties in a manner inconsistent with our interpretation of Const. art. 1, §§ 3 and 14 will have no bearing on our decision in this case.

Our resolution of this case requires our consideration of two additional issues which were not addressed in our prior decision:

1. Must polygraph results which indicated that a key prosecution witness lied in respect to an important piece of testimony be admitted at the sentencing phase?

2. Was the failure to define "mitigating circumstance" for the jury at the sentencing phase a violation of the state or federal constitution?

We address these additional issues in the following two sections.

II

In resolving the issue of whether or not polygraph results are admissible at the sentencing phase of a capital case, the following facts from defendant's trial are relevant.

Defendant's brother, Rodney Bartholomew, was the prosecution's principal witness. Rodney testified as follows. On the evening of August 1, 1981, he and his girl friend went to a laundromat to do their laundry. Defendant was sitting in his car in the parking lot when they arrived. While waiting for the laundry, Rodney sat with the defendant in his car. Defendant told Rodney that he intended to rob the place and "leave no witnesses". Rodney and his girl friend left the laundromat at 9:45 p.m., shortly before it was due to close. Rodney denied helping defendant in any way with the robbery.

On September 23, 1981, Rodney Bartholomew was given

four polygraph deception tests. Two relevant questions were asked during the tests. First, "Did you in any way help Dwayne to rob the laundromat on August 1, 1981?" Second, "On August 1, 1981, at any time were you and Dwayne inside the laundromat at the same time?" Rodney responded in the negative to both questions. The polygraphist concluded, "The above subject was being deceptive when answering the relevant questions with a negative answer." A similar examination was given to Rodney's girl friend, the results of which were "inconclusive" according to the polygraphist. The prosecution did not disclose to defendant that these tests had been given, or the results, until after the guilt and sentencing phases of defendant's trial.

In our prior decision, we held that the nondisclosure of the polygraph examinations did not violate defendant's due process rights so as to require a new trial. However, the question whether polygraph results should be admissible at a sentencing proceeding was specifically reserved. 98 Wn.2d at 204 n.3.

The Washington capital punishment statute requires admission at the sentencing phase of "any relevant evidence which it deems to have probative value regardless of its admissibility under the rules of evidence . . ." RCW 10.95.060(3). We have restricted this provision to evidence in mitigation of punishment. Therefore, only evidence which is not probative or not relevant is excluded at the sentencing phase. With regard to mitigating circumstances, less restrictive standards for relevance and probative value are applied to exclude evidence at the sentencing phase than at the guilt phase.

In *Lockett v. Ohio,* 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954 (1978), Chief Justice Burger, writing for the plurality, stated the rule for the admission of mitigating evidence at the sentencing phase of capital cases:

> [W]e conclude that the Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor,* any aspect of a

defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.
(Footnote omitted.) 438 U.S. at 604. *See also Eddings v. Oklahoma,* 455 U.S. 104, 71 L. Ed. 2d 1, 102 S. Ct. 869 (1982).

We briefly dealt with the issue of the admission of polygraph examinations at the sentencing phase of a capital case in *State v. Grisby,* 97 Wn.2d 493, 502–03, 647 P.2d 6 (1982). However, *Grisby* has little precedential value, since the death penalty statute involved in that case has since been repealed. Also, the former death penalty statute, RCW 10.94, differed significantly from the present statute.

■ We hold that polygraph examination results are admissible by the defense at the sentencing phase of capital cases, subject to certain restrictions. In *State v. Renfro,* 96 Wn.2d 902, 906–07, 639 P.2d 737, *cert. denied,* 459 U.S. 842 (1982), we set forth requirements for the admissibility of polygraph examination results where the parties had stipulated to their admission. We adopt two of those requirements as standards for the admissibility of polygraph examination results at the sentencing phase of capital cases. First, the trial judge may refuse to accept such evidence if he is not convinced that the examiner is qualified or that the test was conducted under proper conditions. Second, if the graphs and examiner's opinion are offered in evidence, the opposing party shall have the right to cross–examine the examiner respecting: (a) his qualifications and training; (b) the conditions under which the test was administered; (c) the limitations of and possibilities for error in the technique of polygraph interrogation; and (d) at the discretion of the trial judge, any other matter deemed pertinent to the inquiry.

It is our belief that when a jury is faced with the question whether or not the defendant should be put to death, the defendant should be allowed to submit any evidence of his "character or record and any of the circumstances of the offense . . .", *Lockett v. Ohio,* 438 U.S. at 604, to convince

the jury that his life should be spared.

### III

Defendant argues that the court's failure to define "mitigating circumstance" for the jury at the sentencing phase was a violation of the Eighth Amendment. Defendant cites *Spivey v. Zant,* 661 F.2d 464 (5th Cir. 1981) in support of his argument. *Spivey v. Zant* is easily distinguished from the present case. The trial court's instructions in *Spivey v. Zant* dealt almost exclusively with the jury's consideration of aggravating factors, no reference being made to the consideration of mitigating circumstances. 661 F.2d at 467–68. The Fifth Circuit Court of Appeals found this reversible error.

Black's Law Dictionary 903 (5th rev. ed. 1979) defines "mitigating circumstances" as follows:

> [Mitigating circumstances are those which] do not constitute a justification or excuse of the offense in question, but which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability.

In the present case, the trial court zealously followed the requirements of RCW 10.95 in the sentencing phase. The court's instruction 2 provided, in part:

> During these special sentencing proceedings, the State bears the burden of proving beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency.

In instruction 3 the trial court recited the interrogatory provided in RCW 10.95.060(4):

> Having in mind the crime of which the defendant has been found guilty, are you convinced beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency?

The court also read the jury the list of relevant factors for consideration provided in RCW 10.95.070. The jury may have found helpful a definition of "mitigating circumstances." However, we conclude that these instructions adequately guided the jury as to the nature and function of mitigating circumstances. Therefore, there was no constitu-

tional error on this issue.

We affirm our prior decision in its entirety. Defendant's conviction is affirmed, but his sentence of death is invalidated. In deference to the view of the majority in our prior decision on the consequence of a reversal of the sentencing phase, this case is remanded to the trial court for a new sentencing hearing to consider anew whether to impose the death sentence.

WILLIAMS, C.J., STAFFORD, BRACHTENBACH, and DOLLIVER, JJ., and CUNNINGHAM, J. Pro Tem., concur.

ROSELLINI, J. (concurring in part, dissenting in part)— While the majority's decision to limit the prosecution to evidence of statutory aggravating factors may be justified in the initial stages of a sentencing proceeding, the jury's need to evaluate the validity of defendant's mitigation evidence requires more liberal standards, once defendant has placed an aspect of his character in issue. Because the majority's rule unfairly restricts the State's right to introduce relevant, reliable rebuttal evidence, I dissent.

My disagreement with the majority lies with its insistence that the rules of evidence must be applied strictly, in the sentencing proceeding, to all evidence introduced by the State, while at the same time allowing defendant an unlimited right to introduce mitigating evidence. I believe this rule unnecessarily and improperly narrows the information available to the jury to that presented by defendant. With only one side before it, the jury cannot rationally resolve the question the statute requires it to address. RCW 10.95-.060(4) states that the jury shall answer the following question:

> "Having in mind the crime of which the defendant has been found guilty, are you convinced beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency?"

Both the truth–seeking process and basic principles of fairness dictate that the jury be exposed to all relevant

reliable evidence in deciding whether to impose the death sentence.

The law should be impartial in its application. Neither the State nor the defendant should have any advantage in presenting evidence. If the evidence is relevant, reliable rebuttal evidence, it should be permitted. By denying the admissibility of reliable evidence, the majority sanctions a situation where the jury is effectively denied information vital to its decision to discharge its duty. This result is unfair to all involved; the State, the jury, the public and those defendants who commit similar acts but receive the death sentence because their crimes resulted in convictions.

Moreover, the majority's position clearly conflicts with the mandate of the United States Supreme Court, which encourages liberal admission of evidence. That Court has stated:

> We think that the Georgia court wisely has chosen not to impose unnecessary restrictions on the evidence that can be offered at such a hearing and to approve open and far–ranging argument. . . . *So long as the evidence introduced and the arguments made at the presentence hearing do not prejudice a defendant,* it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision.

(Italics mine.) *Gregg v. Georgia,* 428 U.S. 153, 203–04, 49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976). *See Zant v. Stephens,* ___ U.S. ___, 77 L. Ed. 2d 235, 103 S. Ct. 2733, 2748 (1983) and *California v. Ramos,* ___ U.S. ___, 77 L. Ed. 2d 1171, 103 S. Ct. 3446, 3457 n.23 (1983).

Finally, the majority's reliance on independent state grounds is misplaced. Due process requires that the jury's decision be based on reliable information. By going beyond this standard and applying arbitrary rules which deny the jury the complete facts, the majority's opinion undermines the very foundations of due process analysis. I therefore dissent from that portion of the opinion that restricts the State's use of evidence in uncharged crimes in rebuttal.

DORE, J. (concurring in part, dissenting in part)—The United States Supreme Court vacated and remanded this court's judgment in *State v. Bartholomew*, 98 Wn.2d 173, 654 P.2d 1170 (1982) (*Bartholomew* I), *defendant's cert. denied*, 103 S. Ct. 3548 (1983), to be reconsidered in light of *Zant v. Stephens*, ___ U.S. ___, 77 L. Ed. 2d 235, 103 S. Ct. 2733 (1983).

### NONSTATUTORY AGGRAVATING EVIDENCE

This court's prior decision in *Bartholomew* I invalidated provisions of the capital punishment statute, RCW 10.95, which allowed the admission of nonstatutory aggravating evidence at the sentencing phase of capital cases. *Bartholomew* I limited the nonstatutory aggravating factors to prior convictions and evidence to *rebut* matters raised in mitigation by the defendant. *Bartholomew* I, at 198–99.

The majority, in Bartholomew II, continues to hold that the provisions of RCW 10.95 remain invalid after reconsideration in light of *Zant*. The majority indicates that these restrictions on nonstatutory aggravating evidence are mandated by either federal constitutional standards or the due process and cruel punishment clauses of our state constitution.

The majority's analysis of federal constitutional standards is founded on the "prejudice" standard found in *Gregg v. Georgia*, 428 U.S. 153, 49 L. Ed. 2d 859, 96 S. Ct. 2909, *reh'g denied*, 429 U.S. 875, 50 L. Ed. 2d 158, 97 S. Ct. 197 (1976), and the "reliability of evidence" standard found in *Gardner v. Florida*, 430 U.S. 349, 51 L. Ed. 2d 393, 97 S. Ct. 1197 (1977).

The *Zant* decision that initiated our reconsideration, and subsequent United States Supreme Court decisions, establish that the majority's interpretation of *Gregg* and *Gardner* is clearly erroneous and that this court's invalidation of portions of the Washington capital punishment statute, RCW 10.95, cannot be sustained under the United States Supreme Court's interpretation of the Eighth Amendment.

*Zant* holds that the constitution does not restrict the

jury's consideration of nonstatutory aggravating factors in deciding whether or not to impose a sentence of death.

[S]tatutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty. *But the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death.*

(Italics mine.) *Zant,* 103 S. Ct. at 2743.

In construing *Gregg,* the Court in *Zant* concluded that the substantive constraints on evidence in aggravation is that the State must make known to the defendant such evidence prior to the proceeding and such evidence cannot be prejudicial. Otherwise, it is preferable not to impose restrictions. *Zant,* 103 S. Ct. at 2747–48. The opinion further holds that it is error to permit, as evidence of aggravating circumstances, conduct which is constitutionally protected. *Zant,* 103 S. Ct. at 2746.

In *California v. Ramos,* ___ U.S. ___, 77 L. Ed. 2d 1171, 103 S. Ct. 3446 (1983), the Court reiterated its position stated in *Zant* that the constitution does not restrict jurors from considering nonstatutory aggravating factors:

Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty . . . the jury then is free to consider a myriad of factors to determine whether death is the appropriate punishment.

*Ramos,* 103 S. Ct. at 3456. The Court indicated that the *Gregg* opinion did not undertake to dictate to the State the particular substantive factors that should be deemed relevant to the capital sentencing decision. The Court stated that the only substantive limitations on the particular factors that a sentencing jury may consider are that they not be prejudicial or evidence that the defendant has had no opportunity to explain or deny. *Ramos,* 103 S. Ct. at 3453–54. The Court interpreted the rule of *Gardner* as follows:

In *Gardner,* the Court reversed a death sentence that had been imposed in part on the basis of a confidential

portion of a presentence investigation report that had not been disclosed to either the defendant or his counsel. Because of the potential that the sentencer might have rested its decision in part on erroneous or inaccurate information that the defendant had no opportunity to explain or deny, the need for reliability in capital sentencing dictated that the death penalty be reversed.

*Ramos,* 103 S. Ct. at 3454.

In *Barclay v. Florida,* ___ U.S. ___, 77 L. Ed. 2d 1134, 103 S. Ct. 3418, 3424 (1983), the United States Supreme Court stated:

We have never suggested that the United States Constitution requires that the sentencing process should be transformed into a rigid and mechanical parsing of statutory aggravating factors.

The majority's holding in Bartholomew II, that nonstatutory aggravating evidence (other than convictions or in rebuttal) is unconstitutionally prejudicial, cannot be sustained on the basis of *Gregg* or *Gardner.* The constitution does not prohibit consideration at the sentencing phase of information not directly related to either statutory aggravating or statutory mitigating factors, so long as that information is relevant to the character of the defendant or the circumstances of the crime.

The majority opinion next addresses state constitutional protections and holds that the due process and cruel punishment provisions are offended by the provisions of RCW 10.95.060(3) in any case involving capital punishment by (1) allowing the introduction of any evidence regardless of its admissibility under the rules of evidence, including hearsay evidence, and (2) allowing evidence of defendant's prior criminal activity regardless of whether defendant was charged or convicted as a result of such activity. While I am in general agreement with this holding, it does not follow that the authority to receive nonstatutory aggravating evidence must be confined to evidence in rebuttal of mitigation. The rules governing admissibility of evidence are

premised on allowing evidence which is trustworthy, reliable, and not unreasonably prejudicial. The purpose of these rules is to afford a litigant a fair trial and insure compliance with the constitutional guaranties of due process. The portion of RCW 10.95.060(3) that authorizes the admission of evidence of a defendant's alleged prior criminal activity (other than convictions) is inconsistent with these rules of evidence and state constitutional standards. Admissibility of such evidence is of such an unreasonably prejudicial nature as to be violative of article 1, section 14 of the state constitution. Courts in some jurisdictions have considered similar questions under varying circumstances, and for varying reasons reached the same result. *E.g., Scott v. State,* 297 Md. 235, 465 A.2d 1126, 1135–36 (1983); *Perry v. State,* 395 So. 2d 170, 174 (Fla. 1980); *Cook v. State,* 369 So. 2d 1251, 1257 (Ala. 1978); *State v. McCormick,* 272 Ind. 272, 397 N.E.2d 276, 280 (1979). I find it appropriate to place a blanket of inadmissibility on such evidence.

However, I see no basis for holding that the rules of reliability and prejudice mandate that we limit nonstatutory aggravating evidence (other than convictions) to matters in rebuttal of mitigating evidence. Due process requires that the sentencing jury's decision be based on reliable and nonprejudicial evidence. Basic fairness in the balancing process between aggravation and mitigation requires the jury to consider all admissible evidence, whether proposed by the State or defendant. State constitutional guaranties do not mandate that the State's nonstatutory aggravating evidence be limited to rebuttal evidence of mitigation. The majority rule unfairly restricts the State's right to introduce relevant, reliable evidence.

I would provide that admissibility of nonstatutory aggravating evidence be governed by the rules of evidence, and its admissibility be determined by the trial court at the sentencing phase. I see no basis or justification to broaden the protections of the state constitution beyond those guaranties provided in the federal constitution in this context.

In all other respects, I concur in the majority opinion.

DIMMICK, J., concurs with DORE, J.