IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

               Respondent,

       v.

ALEJANDRO CARDENAS, JR.,

               Appellant.

No. 80076-1-I

DIVISION ONE

UNPUBLISHED OPINION

SMITH, J. — Alejandro Cardenas Jr. appeals his conviction for second degree assault, alleging that the admission of the victim's out-of-court photo identification and subsequent in-court identification violated his due process rights under the federal and state constitutions. We conclude that the photomontage used by law enforcement was unnecessarily suggestive. However, because the court reasonably concluded that there was no substantial likelihood of irreparable misidentification, we affirm the trial court's admission of the identification. Furthermore, we conclude that a different outcome is not required under our state constitution. Finally, we grant the parties' request to amend Cardenas's community custody term to comply with RCW 9.94A.702.

FACTS

On February 27, 2016, Alberto Alonso was attacked by two men in a 7-11 parking lot in Monroe, Washington. The men punched him repeatedly in his face and head for 15 to 20 seconds. Alonso, who did not understand English very well, told hospital staff that day that he did not know who his attackers were. He

also told a police officer, through the use of an interpreter, that he did not know the names of his attackers, but that they were two Hispanic men with suspected gang involvement who used to live in his neighborhood.

After reviewing the 7-11 surveillance video, the police officer prepared a photographic lineup containing an image of the registered owner of the vehicle that the attackers had driven. On March 10, 2016, when the officer arrived to show Alonso the photomontage, Alonso disclosed that he had learned from friends that the attackers' names were Alejandro and Carlos. When he viewed the photomontage, Alonso indicated that neither of the men was included in the lineup, and that the men who had attacked him were younger than those pictured.

Based on this information, the police department prepared new photomontages containing images of Alejandro Cardenas and Carlos Villegas. The photo montage used for Cardenas depicted six Hispanic men with similar facial hair. However, four of the photographs were of the same person, such that Cardenas was one of only three unique people in the lineup. Furthermore, Cardenas was the only person in the lineup wearing a jail uniform.

Before viewing this montage, Alonso informed the police officer that he had learned his attackers' full names, and he identified them as Alejandro Cardenas and Carlos Villegas. When he viewed the new photomontages, he picked out Cardenas and Villegas and wrote their names next to their pictures.

Cardenas moved to suppress Alonso's out-of-court identification as well as his anticipated in-court identification. He alleged that the flaws in the

2

photomontage created a substantial likelihood of irreparable misidentification that would make the admission of Alonso's identification a violation of Cardenas's due process rights. The court admitted the identification, concluding that although the montage was "quite poor," there was not a substantial likelihood of irreparable misidentification because Alonso already knew Cardenas's face. A jury subsequently found Cardenas guilty of second degree assault. The court sentenced Cardenas to 9 months in jail, with an 18-month term of community custody. Cardenas appeals.

ANALYSIS

On appeal, Cardenas alleges that Alonso's identification should have been suppressed because it violated his federal due process rights. Furthermore, he contends that article I, section 3 of the state constitution requires additional assurances of reliability for eyewitness identification evidence. Finally, the parties request permission to amend Cardenas's judgment and sentence to shorten his community custody term. Because there were sufficient indicia of reliability supporting Alonso's identification, we disagree with Cardenas and affirm the trial court. However, we agree that Cardenas's community custody term exceeded the amount of time allowed by statute and grant the parties' request to amend the sentence.

Standard of Review

The admission of identification evidence is "subject to the sound discretion of the trial court." State v. Kinard, 109 Wn. App. 428, 432, 36 P.3d 573 (2001). Accordingly, on review we ask "whether there are tenable grounds or reasons for

the trial court's decision." Id. Unchallenged findings of fact are verities on appeal. Rush v. Blackburn, 190 Wn. App. 945, 956, 361 P.3d 217 (2015).

Federal Due Process Grounds for Suppression

When law enforcement uses "an identification procedure that is both suggestive and unnecessary," a defendant's federal due process rights are implicated. Perry v. New Hampshire, 565 U.S. 228, 238-39, 132 S. Ct. 716, 181 L. Ed. 2d 694 (2012). If this procedure creates a "'very substantial likelihood of irreparable misidentification,'" the trial court must suppress the evidence. Id. at 232. Where unreliability is not caused by the state or does not cause a very substantial risk of misidentification, due process does not require suppression. Id.; State v. Allen, 176 Wn.2d 611, 622, 294 P.3d 679 (2013). Instead, due process in these cases "protects a defendant against a conviction . . . by affording the defendant means to persuade the jury that the evidence should be discounted." Perry, 565 U.S. at 237.

Accordingly, to succeed on a motion to suppress, the defendant must first establish that the identification procedure was impermissibly suggestive. State v. Vickers, 148 Wn.2d 91, 118, 59 P.3d 58 (2002). A procedure is suggestive if it directs undue attention to the defendant. State v. Eacret, 94 Wn. App. 282, 283, 971 P.2d 109 (1999). If he establishes this, the court then considers whether the procedure created a substantial likelihood of irreparable misidentification based on the totality of the circumstances. Vickers, 148 Wn.2d at 118. The reliability of the identification is accordingly the "central question" in a motion to suppress identification evidence. Neil v. Biggers, 409 U.S. 188, 199, 93 S. Ct. 375, 34 L.

Ed. 2d 401 (1972). In answering this question, the court should consider the totality of the circumstances, including 5 factors described in Biggers: "(1) the opportunity of the witness to view the criminal at the time; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation." State v. Barker, 103 Wn. App. 893, 905, 14 P.3d 863 (2000).

In this case, the court answered the first question by acknowledging that the photomontage presented to Alonso was "quite poor," but in answering the second question, it ultimately concluded that there was "not a very substantial likelihood of irreparable misidentification." We agree with Cardenas and the trial court that Cardenas has met his burden as to the first question. Cardenas is the only person in the montage wearing the "distinctive striped clothing of a Snohomish County Jail inmate." See State v. Ramires, 109 Wn. App. 749, 756, 762, 37 P.3d 343 (2002) (affirming trial court's conclusion that photomontage was unduly suggestive where only the suspect was wearing a dark shirt described by the witness). Furthermore, including multiple unique faces in a photomontage provides protection against possible random identifications. The fact that Cardenas was only one of three, instead of one of six, unique people in the lineup greatly decreased this protection. Thus, the trial court properly moved to the second step of this analysis.

The trial court's conclusion that there was not a substantial likelihood of irreparable misidentification is supported by the record. In an unchallenged

5

finding, the court noted that Alonso told law enforcement on the day of the attack that the men who attacked him used to live in his neighborhood. A plausible inference is that Alonso already recognized their faces, even if he did not know their names. As the defense expert testified at the suppression hearing, there is a low risk of erroneous identification if the person being identified has an already familiar face to the witness. Given the presence of some evidence that Alonso recognized the men, the court was justified in allowing the jury to weigh the credibility of the identification.

Cardenas disagrees and asserts that the court erred by not making explicit findings for each of the Biggers factors. While the court could have been more explicit in its findings, we do not find this to be a reversible error. First, the court's findings and oral ruling do touch on the five factors: for instance, its finding that Alonso was attacked for 15 to 20 seconds speaks to Alonso's opportunity to view the suspect as well as his degree of attention. The court noted that Alonso wrote Cardenas's name next to his photograph, illustrating Alonso's degree of certainty. It noted that the assault took place on February 27, 2016, and that Alonso identified Cardenas in the photomontage on April 11, which speaks to the time between the crime and the confrontation. Moreover, Biggers makes clear that the question of reliability of an identification depends on the totality of the circumstances. Biggers, 409 U.S. at 199. The factors— particularly the opportunity of the witness to view the criminal at the crime, the witness's degree of attention, and the time between the crime and the confrontation—are most relevant to situations where the witness is identifying a

6

stranger, not a familiar face. See id. Accordingly, the court appropriately found that the totality of the circumstances illustrates that there was not a substantial likelihood of irreparable misidentification.

Finally, Cardenas contends that Alonso's subsequent in-court identification of Cardenas should have been suppressed. Because the out-of-court identification is admissible, and because there is evidence Alonso already recognized Cardenas's face, the photomontage's suggestiveness cannot justify the suppression of the in-court identification. State v. Hilliard, 89 Wn.2d 430, 439-40, 573 P.2d 22 (1977) ("The final contention is that because the photographic identification was impermissibly suggestive, the in-court identification should have been suppressed. First, the photographic identification was not improper. Second, even if the photographic identification procedure were questionable, the in-court identification is proper if it has an independent origin.").

State Due Process Grounds for Suppression

Cardenas also contends that article I, section 3 of the Washington constitution requires broader protection against suggestive photo identification than its federal counterpart. We disagree.

As an initial matter, Cardenas did not raise the state constitutional ground for suppression before the trial court. Under RAP 2.5(a), we need not review a claim of error that was not raised below, except that a party may contend for the first time on appeal that there was a manifest error affecting a constitutional ground. Review under this standard is "appropriate for 'obvious' errors that could

have been 'foreseen' by the trial court." State v. Ramirez, 5 Wn. App. 2d 118, 133, 425 P.3d 534 (2018) (quoting State v. O'Hara, 167 Wn.2d 91, 99-100, 217 P.3d 756 (2009)), review denied, 192 Wn.2d 1026, cert. denied, 140 S. Ct. 329 (2019). In Ramirez, we declined to address this issue, noting that the trial court did not commit any obvious or foreseeable error given that "[t]he Washington Supreme Court has repeatedly refused to recognize constitutional safeguards regarding eyewitness testimony beyond those set by the federal constitution." Id. at 134.

Even if we were to analyze this issue, the outcome would not change. To determine whether a state constitutional provision grants greater protections than its federal counterpart, we analyze the factors enumerated in State v. Gunwall. 106 Wn.2d 54, 720 P.2d 808 (1986). These factors are: (1) the state provision's textual language; (2) significant differences between the federal and state texts; (3) state constitutional and common law history; (4) existing state law; (5) structural differences between the federal and state constitutions; and (6) matters of particular state interest or local concern. Id. at 61-62.

We previously examined these factors in the context of eyewitness identification in an unpublished decision. State v. Haff, No. 70296-3-I, slip op. at 14-24 (Wash. Ct. App. Feb. 23, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/702963.pdf. In that case, we noted that the first two factors weigh against an independent interpretation because the text of the two provisions is "nearly identical." Id. at 15 (comparing Washington's article I, section 3, provision stating, "'[n]o person shall be deprived of life, liberty,

8

or property, without due process of law'" to the Fourteenth Amendment statement: "'nor shall any state deprive any person of life, liberty, or property, without due process of law.'").  As to the third factor, Cardenas cites no state constitutional or common law history that weighs in favor of independent interpretation, which is consistent with our observations elsewhere that "there is no contemporary record showing a broader meaning was intended by those adopting the Washington" due process clause.  State v. Spurgeon, 63 Wn. App. 503, 506, 820 P.2d 960 (1991).

The fourth factor, preexisting state law, does not establish that greater limitations should be placed on eyewitness identifications under the state constitution.  To the contrary, our Supreme Court has "traditionally . . . practiced great restraint in expanding state due process beyond federal perimeters." Rozner v. City of Bellevue, 116 Wn.2d 342, 351, 804 P.2d 24 (1991).  Cardenas cites no cases establishing broader protections against faulty eyewitness identifications in Washington, instead relying only on State v. Bartholomew, 101 Wn.2d 631, 683 P.2d 1079 (1984).  This reasoning fails because in that case, the court did not hold that the state due process clause provided broader protection than its federal counterpart.  Instead, it merely stated that "[o]ur decision rests on an interpretation of both the state and federal constitutions.  However, the independent state constitutional grounds we have articulated are adequate, in and of themselves, to compel the result we have reached."  Id. at 644. Furthermore, as we discussed in Haff, many Washington cases support the conclusion that the Washington and federal due process clauses provide

9

equivalent protection. Haff, No. 70296-3-I, slip. op. at 20-22.

As we noted in Spurgeon, the fifth and sixth factor generally lean toward broader protection for defendants under the Washington constitution, but lack specific links to the relief requested here. The fifth factor supports an independent construction because the federal constitution is a grant of enumerated powers, whereas the state constitution is a limit on sovereign powers. Spurgeon, 63 Wn. App. at 506. Similarly, with regard to the sixth factor, "the fact that criminal law enforcement is primarily a function of state government rather than the national government is true for every criminal case." Id. at 507.

Because the Gunwall factors overall do not support a broader interpretation of the Washington due process clause, we reject Cardenas's contention.

Request To Amend Sentence

The parties request permission to amend Cardenas's sentence. We agree that this is appropriate.

When "an offender is sentenced to a term of confinement for one year or less" for second degree assault, "the court may impose up to one year of community custody." RCW 9.94A.702(1)(b)-(c) (applying one-year limit to violent offenses and crimes against persons); see also RCW 9.94A.030(55) (defining violent offenses to include second degree assault); former RCW 9.94A.411 (2006) (defining crimes against persons to include second degree assault). However, while Cardenas was sentenced to only 9 months of confinement, the court imposed 18 months of community custody, in excess of the limit provided

by RCW 9.94A.702.

RAP 7.2(e) provides that after we have accepted review of a decision, our permission must be acquired before the trial court may modify it. Because Cardenas's community custody term is too long, we grant permission to modify his sentence to comply with the terms of RCW 9.94A.702.

Accordingly, we affirm Cardenas's conviction and grant the parties' request to amend the sentence.

WE CONCUR: