**William M. PROVO, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–301.**

Court of Criminal Appeals of Oklahoma.
April 20, 1976.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Bill Bruce, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, William M. Provo, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF-

75–130, for the offense of First Degree Murder, in violation of 21 O.S.Supp.1974, § 701.1, ¶ 2. In accordance with the provisions of 21 O.S.Supp.1974, § 701.3, defendant was thereafter sentenced to suffer death, and from said judgment and sentence a timely appeal has been perfected to this court.

As this case requires reversal for failure of the trial court to instruct upon first degree manslaughter as a lesser included offense, we deem a complete statement of the facts adduced upon trial to be unnecessary. The uncontroverted evidence introduced in behalf of the State established that on January 8, 1975, defendant robbed Marcel Kasner, doing business as Kasner's Jewelry Store in Oklahoma City, after using a wooden club with a metal cap to beat the victim unconscious. The 77-year-old victim died four days later as a result of severe head and brain injuries sustained by the blunt force trauma, although he suffered from heart and lung disease as well as coronary arteriosclerosis, or hardening of the arteries, which resulted in complications contributing to death. Defendant executed a notarized statement wherein he admitted concealing the wooden club upon his person and going to the store with the intent of committing robbery, and in most pertinent part described the events surrounding the actual commission of the offense, as follows:

"A. I asked him to see a watch and I told him to let me see several more watches and I was trying to make up my mind whether to rob him or not. So I kept after him to let me see this watch and everything. I think he was getting kind of suspicious or something.

"I had the club beside my leg and I hit him on the side of his head. I was on one side the counter and he was on the other side. He was trying to struggle with me and I hit him again. I hit him behind the neck then. That's when I went around on the other side. He was falling, but he hadn't fell yet. I hit him again and I guess I knocked him out and I started

gathering up the watches. Then I went around on the other side to get some rings and I looked and he was getting up again. That's whem [sic] I come back and hit him some more. And I went back around and got some rings and [spilled] some on the floor. Then I went back around on the other side where he was at and he was still unconscious but he was breathing. I looked up and I see that camera. [An imitation video camera utilized as a protective device.]

   *    *    *    *    *    *

"A. I started looking for something to pry it up with. And I was looking around and seen a bunch of junk piled up and I found this knife. So I jumped over there and pried the camer [sic] loose and broke the knife and I got the camera loose and cut the cord. And I found a paper sack and I tried to put the camera, the knife, and the weapon I used all in the sack. The sack split. So I just wrapped some newspaper around all of it and seen a cover lying on the counter so I gathered up my box of jewels and I had the camera and the stick and the knife and wrapped it up in the cover. Then I looked back over the counter and Mr. Kasner still was trying to get up and that's it and I hurried out the door." [Tr. 110–111]

When asked if there were anything else that he would like to add to the statement, defendant replied:

"A. Well, my intentions were to rob Mr. Kasner and knock him out and take what jewels and things I could, but not really to hurt him. He put up a pretty hard fight. I hope he lives." [Tr. 113–114]

The remark quoted immediately above thus introduced evidence specifically refuting a premeditated design to effect death, a necessary element to all categories of first degree murder as defined in 21 O.S.Supp. 1974, § 701.1.

When this case was called for oral argument, this Court raised for the first time the question of whether an instruction upon first degree manslaughter as a lesser included offense was necessary under the evidence presented, and each party thereafter responded appropriately with supplemental briefs.

Emphasizing that defendant failed to request an instruction upon first degree manslaughter, the State first presents some argument that the evidence did not necessitate such an instruction, and secondly argues that the defendant was not prejudiced by the failure to instruct upon that offense since the jury necessarily concluded that defendant acted with a premeditated design to effect death in convicting him of first degree murder.[1]

■ In support of the first argument, the State cites *Murray v. State*, Okl.Cr., 528 P.2d 739, 740 (1974), wherein we held that the evidence did not warrant an instruction upon a lesser degree of homicide, and stated:

". . . The evidence presented was that there was an armed robbery and a homicide. Under this evidence the defendants were either guilty of Murder in the First Degree, or nothing. . . ."

However, that decision indicates that each of the two defendants simply denied committing the homicidal act altogether, and the defendants offered no testimony admitting the assault nor asserting that it was committed without the premeditated intent

---

1. This argument is based on a logical fallacy and if adopted by this Court would eliminate the necessity of instructing on any included offense no matter how much evidence was presented in support of a requested instruction. In adopting this argument, this Court, for example, could conclude in any case that it was unnecessary to give an instruction on self defense although there was ample evidence to support such an instruction because the jury quite obviously found the defendant guilty of the offense charged in the information. Such is clearly not the law.

to kill the deceased. Whereas, in the present case there was the statement of the defendant that the assault was not committed with premeditated intent to kill and the further statement that "I hope he lives," which when considered together with the instrument used and the fact that the victim did not die until four days after the assault and robbery, presented a question of fact for the determination of the jury as to whether the homicide was committed with a premeditated design to effect death or without such intent.

. The facts in the instant case bring it squarely within the rule enunciated in *Tarter v. State,* Okl.Cr., 359 P.2d 596 (1961), where the defendant repeatedly shot the victim some twenty times and was convicted of premeditated murder. The record, in that case, reflects the following, at page 600:

> "The Sheriff specifically testified that before news of the death came over the radio, he asked the defendant why he did it, and he said, 'He kept tantalizing me. I just couldn't stand it any longer, I just had to shoot him'. The Sheriff said he asked Tarter if he knew Roby might die, and Tarter replied, 'No, I didn't intend to kill him, I just shot him in the legs', and repeated, 'I wanted him to suffer as I have suffered.'
>
> "All the way to Duncan he said the defendant seemed to feel that what he had done was right and felt good about it. When news came that Hall was dead, the defendant said, 'Oh, my God', and began to cry."

Under the circumstances presented, we held that there was evidence from which the jury could conclude that defendant did not shoot the victim with a premeditated design to kill, and that the failure of the trial court to instruct upon first degree manslaughter as an included offense was fundamental error. We therein quoted with approval from the discussion of premeditation as an element of murder in the early case of *Jewell v. Territory,* 4 Okl. 53, 43 P. 1075, 1077 (1896), as follows:

"[T]he homicidal act must be done with a premeditated design to effect the death of the person killed, or some other person. The premeditated design to effect death is the material element of the offense, and must exist at the time the homicidal act is committed, or there is no murder. It is not sufficient that the fatal shot was fired premeditately, for this only implies that the act is done in pursuance of a prior determination. This may be true, and yet the shot have been fired for the purpose of maiming or disabling the injured party. . . . And one may shoot at another with malice aforethought, intending only to break his pistol arm, or disable him, yet with no design to effect the death of the person he desires to injure. . . ."

Without supplanting our judgment for that of the jury in the present case, we cannot conclude that defendant suffered no prejudice as a result of the failure of the trial court to instruct upon first degree manslaughter, for as observed in *Tarter,* "without it, the jury had no other alternative than to find the defendant guilty of murder." In the Syllabus to that decision, this Court again recognized that:

"2. In a prosecution for murder, the court should instruct the jury on the law of each degree of homicide which the evidence tends to prove whether it be requested on the part of the defendant or not; and it is the duty of the court to decide, as a matter of law, whether there is any evidence that would tend to reduce the degree of the offense to manslaughter in the first degree.

"3. In determining whether there is any evidence tending to reduce the degree of the homicide from murder to manslaughter, the trial court should give the defendant the benefit of any doubt which the evidence may suggest, and instruct the jury on the law of each degree which the evidence tends to prove, whether requested or not.

    \*      \*      \*      \*      \*      \*

"5. Where, in a murder charge, the evidence creates a reasonable doubt that the killing was committed with premeditated design to effect death, the proper exercise of discretion should direct the giving of an instruction on manslaughter."

In passing, we observe that the trial court properly refused to give the requested instruction on the offense of robbery; however, we are of the opinion that the evidence presented would support a jury's verdict for either murder in the first degree or manslaughter in the first degree.

 In accordance with *Tarter*, we hold that the failure of the trial court to instruct upon first degree manslaughter was fundamental error, and this case is *REVERSED AND REMANDED* for further proceedings not inconsistent with this opinion.

BRETT, P. J., and BLISS, J., concur.