**Eleanor Laski SEGLER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–177.**

Court of Criminal Appeals of Oklahoma.

Nov. 22, 1976.

Robert W. Pittman, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Douglas L. Combs, Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

Eleanor Laski Segler, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–74–3440, for the offense of Murder in the Second Degree, in violation of 21 O.S.Supp.1973, § 701.2. Her punishment was fixed at a term of ten (10) years' to life imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Annecia Pearl Covington testified that on October 9, 1974, she was living with her brother, Gerald Segler and his wife, the defendant. Some time between 11:00 a.m. and 12:00 noon, she heard a gunshot and also heard Gerald say, "Oh, no Eleanor." (Tr. 206) She observed defendant run up the steps with a gun in her hand. Defendant stated, "I'm sorry, I didn't mean to do it." (Tr. 209).

Dr. Fred D. Jordan testified that he was the Assistant Chief Medical Examiner for the State of Oklahoma; that he performed an autopsy on the body of Gerald Edwin Segler and found that the cause of death was a gunshot wound which caused extensive bleeding in both chest cavaties.

Officer Martin Doherty testified that he arrived at the Segler home at approximately 12:20 p.m. He identified State's Exhibit No. 4, a .22 caliber single-action six-shot Omega revolver, which he found on a step in the residence. He unloaded the weapon and found that it contained four live rounds and two spent hulls. He testified that the door between the downstairs hall and bedroom had a bullet hole in it. He identified State's Exhibit No. 10 as a bullet he found on the floor in the bedroom.

Officer Charles Wood testified that he assisted in the investigation at the Segler home, as a back-up officer. As he entered the residence he observed a gun on the stairway, wrapped in the strap of a lady's purse. He took the defendant into the living area and advised her of her *Miranda* rights. At the in camera hearing, he testified that defendant stated that "she didn't mean to shoot him, that she was sorry that he is dead." (Tr. 354) He released her to the custody of Officers Kemp and Fairchild.

Officer Monty Fairchild testified that when he arrived at the scene, the defendant was hovering over the victim, who was lying on his back at the bottom of the stairs. He transported the defendant to a scout car. While in the car, Officer Tom Kemp advised defendant of her constitutional rights. Defendant stated, "That after firing one shot through the door, her husband had opened the door and while arguing she had waived her hand and the gun went off." (Tr. 390) He identified State's Exhibit No. 4 as a single-action .22 caliber weapon which requires that each time the weapon is fired that the hammer must be pulled back.

Officer Tom Kemp testified that when he arrived at the scene, the defendant was bending over her husband, and stated, "Help him, help him, I'm sorry, I didn't mean to." (Tr. 401) He had a subsequent conversation with defendant in the police unit and she stated that she and her husband had been arguing and he slammed the door in her face. She shot through the door to scare him. Her husband opened the door and "they were arguing, hand waiving, and the gun went off." (Tr. 410)

Ray Lambert, a firearms examiner for the Oklahoma State Bureau of Investigation, testified that he received State's Exhibit No. 4, the pistol, and State's Exhibit No. 2, a bullet, from Officer Bruce Knox.

In his opinion, the bullet was fired from State's Exhibit No. 4.

Defendant asserts six assignments of error, only one of which we deem necessary to discuss in this opinion. In her third assignment of error, she contends that the trial court erred in refusing to instruct the jury on the lesser included offenses. We concur that the trial court should have submitted defendant's requested instruction for First Degree Manslaughter. The record is replete with exculpatory statements made by the defendant to the effect that "I didn't mean to do it" and that "the gun went off." In dealing with a similar assignment of error in the recent case of *Provo v. State,* Okl.Cr., 549 P.2d 354 (1976), we stated:

"Without supplanting our judgment for that of the jury in the present case, we cannot conclude that defendant suffered no prejudice as a result of the failure of the trial court to instruct upon first degree manslaughter, for as observed in *Tarter* [*Tarter v. State,* Okl.Cr., 359 P.2d 596 (1961)], 'without it, the jury had no other alternative than to find the defendant guilty of murder.' In the Syllabus to that decision, this Court again recognized that:

'2. In an prosecution for murder, the court should instruct the jury on the law of each degree of homicide which the evidence tends to prove whether it be requested on the part of the defendant or not; and it is the duty of the court to decide, as a matter of law, whether there is any evidence that would tend to reduce the degree of the offense to manslaughter in · the first degree.

'3. In determining whether there is any evidence tending to reduce the degree of the homicide from murder to manslaughter, the trial court should give the defendant the benefit of any doubt which the evidence may suggest, and instruct the jury on the law of each degree which the evidence tends to prove, whether requested or not.

\*    \*    \*    \*    \*

'5. Where, in a murder charge, the evidence creates a reasonable doubt that the killing was committed with premeditated design to effect death, the proper exercise of discretion should direct the giving of an instruction on manslaughter.' "

This clause is, accordingly, *REVERSED AND REMANDED FOR A NEW TRIAL.*

BRETT, P. J., and BLISS, J., concur.