**Kenneth Eugene HOGAN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–88–918.**

Court of Criminal Appeals of Oklahoma.

June 8, 1994.

Order Denying Rehearing July 27, 1994.

Irven R. Box, Diane Clowdus, Oklahoma City, for appellant at trial and on appeal.

Robert H. Macy, Dist. Atty., Sandra Stensaas, Asst. Dist. Atty., Oklahoma City, for the State at trial.

Robert H. Henry, Atty. Gen., Carol Price Dillingham, Asst. Atty. Gen., Oklahoma City, for appellee on appeal.

## OPINION

JOHNSON, Vice Presiding Judge:

The appellant, Kenneth Eugene Hogan, was charged with the crime of Murder in the First Degree in the District Court of Oklahoma County, Case No. CRF–88–646, before the Honorable James L. Gullett, District Judge. Such charge was in violation of 21 O.S.1981, § 701.7. A jury trial was held wherein the jury returned a verdict of guilty and set punishment at death by lethal injection. The trial court sentenced the defendant in accordance with the verdict by the jury. From this Judgment and Sentence, the defendant has perfected his appeal to this Court.

### STATEMENT OF FACTS

The appellant (hereinafter referred to as the defendant or appellant) had been friends with the victim, Lisa Renee Stanley, for several years. The exact nature of the friendship or the extent of friendship, whether sexual or not, was disputed at trial. The defendant's wife indicated she had received between thirty and thirty-five phone calls from the victim during the preceding year; further, the victim's husband knew of the friendship between the defendant and the victim, and was apparently quite jealous over that relationship.

The events in question occurred on January 28, 1988. George Stanley, the husband of the deceased, returned home at approximately 8:15 p.m. and discovered his wife's body. She had been stabbed some twenty-five times in the head, neck, chest and back. Her throat had been cut through the larynx.

The police investigation revealed that the murder scene had clear evidence of a struggle. The furniture had been turned over or knocked around, wedding pictures were thrown on the floor, and a purse was turned over on a dinette table. A bathroom door had been kicked in. Inside the bathroom, the detectives found a large butcher knife and red stains in the sink which appeared to be blood. Evidence was collected from the scene, including the knife, various hair and fiber samples, together with blood samples from around the house. Also taken was the victim's clothing and carpet from the apartment.

From evidence gathered at the scene and the statement given by the defendant, the defendant and deceased were smoking marijuana during the afternoon of January 28, 1988. The defendant had told his wife that he was going to work but went to the deceased's home when her husband was gone. The defendant admitted that he was at the time of the incident charged with second degree burglary in Cleveland County and he said the deceased had asked him to steal or get her a stereo. The defendant stated he refused to do so and the two started arguing. The defendant stated he was leaving but the deceased refused his exit and threw a coat rack down, then began shouting "no, Ken; no, don't Ken". The defendant indicated he tried to quiet the deceased but she ran into a bathroom and locked the door, which he finally kicked down.

The deceased ran to the front door and yelled for help but the defendant kicked the door shut and threatened to tell the deceased's husband and her mother about an abortion that she had shortly before her marriage. The defendant stated the deceased then "got a wild look in her eye" and went to the kitchen. He stated he tried to leave but the deceased came back into the room with a knife and "pushed" the knife at the defendant. Defendant's hand was cut when he grabbed the knife intending to fend off the stab wound. The deceased then ran to the kitchen indicating that she was going to get another knife. Appellant stated he was afraid the deceased was going to tell the police that he had tried to rape her.

The defendant then chased the victim, stabbing her numerous times, which resulted in her ultimate death. He then disarranged the room, hoping to create the effect of a fight between the deceased and an unknown intruder. He cleaned his wounds, left the apartment, and drove to a hospital emergency room for treatment of the cuts.

Appellant was admitted to the Moore Hospital at approximately 1:45 p.m. on January 28, 1988. The emergency room clerk who processed the defendant indicated that the defendant gave two different stories as to how the accident occurred and appeared nervous. The doctor who treated the defendant indicated that the defendant gave a combination of the first two stories and that he appeared to be well-oriented, and did not appear to be suffering from either an emotional disturbance nor under the influence of drugs.

The defendant asked his wife to tell the police that he had been injured in the garage at home and that he was home all day on January 28th. When his wife spoke to the police, she informed them the defendant was not home on the day of the murder and that he had asked her to tell them another story. A search waiver was obtained and various clothing items matching the description of clothes the defendant wore on the day of the murder were obtained. Tests on the clothing indicated a blood splatter pattern on the flannel shirt front and a defused blood transfer pattern on the knee of some sweat pants.

The defendant spoke with Detective Horn on February 3, 1988, and made various statements with various inconsistencies before his confession. The confession was quite detailed as to what occurred on the date of the homicide.

A police blood splatter expert indicated there were large amounts of blood at the end of the kitchen counter, in front of the sofa and on the carpet under the victim, and smaller amounts in the dining area. The blood in the bathroom appeared to have been diluted and the pattern increased in volume as the trail led to the living room. From the way blood was found on the victim and the evidence at the scene, the expert concluded the victim remained in an upright position during a portion of the stabbing. The evidence also indicated that the initial stabbing occurred in the kitchen with the final blows coming in the living room area.

## PROPOSITIONS OF ERROR

■ First, the appellant states the trial court erred in refusing to instruct the jury with the defendant's requested instruction regarding the crime of manslaughter in the first degree. We find this proposition of error to be without merit. The facts make it clear that a heat of passion theory is not justified. The defendant's statements, together with the evidence, show a clear design to effect the victim's death in a cold and calculated manner.

■ The requested instruction was not given after a long and heated argument by counsel in this case. This Court has held heat of passion alone does not reduce a homicide to manslaughter without adequate provocation. We have held the fatal blow or blows must be the unpremeditated result of the passion aroused. *Ex parte Bollin,* 3 Okl.Cr. 725, 109 P. 288 (1910). The statement of the defendant plus the facts show that the blows did not come because of any overt acts on the part of the deceased, but came because the defendant believed the reporting of attempted rape, together with his pending burglary charge, would result in his imprisonment. The trial court only has the duty to instruct on lesser degrees when required by the evidence. *Dunford v. State,* 702 P.2d 1051 (Okl.Cr.1985); *Jones v. State,* 650 P.2d 892 (Okl.Cr.1982).

There is sufficient evidence to support the premeditation in this case, which includes the manner of the killing and the pattern of the wounds. This Court has previously held the trial court's decision not to give a first degree manslaughter instruction was supported in part by evidence of twenty-five stab wounds that the appellant inflicted upon the victim. *Duvall v. State,* 825 P.2d 621 (Okl.Cr.1991), cert. denied, —— U.S. ——, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992).

The evidence clearly shows that the death was the result of a brutal and repeated stabbing. Evidence shows that the attack began in the kitchen, went from there to the bathroom, and finally to the living room where the victim died. The defendant stated he was putting on his coat and attempting to leave the scene of this brutal killing. However, instead of leaving the scene, he followed the deceased into the kitchen from which point a bloody trail to the ultimate death

ensued. This evidence reveals the defendant was clearly not acting out of a heat of passion, but premeditated murder.

██ The second proposition of error is the trial court's failure to instruct on the defense of voluntary intoxication. The defense of voluntary intoxication has been used to show a lack of criminal intent to commit a murder and thus reduce such offense to a manslaughter. *James v. State*, 648 P.2d 1251 (Okl.Cr.1982). Before the instruction can be given, evidence must be introduced that raises a reasonable doubt as to a person's ability to form the prerequisite intent. *Norman v. State*, 648 P.2d 1243 (Okl.Cr.1982). The evidence in this case does not warrant such an instruction. Although appellant claimed to have been smoking marijuana, this did not raise a reasonable doubt as to his ability to form intent. Dr. Self testified that she did not think the defendant was intoxicated nor under the influence of drugs; therefore, the instruction was not warranted.

██ Appellant's next proposition is the court erred in failing to strike the Bill of Particulars thereby depriving the defendant the opportunity to fully present his defense by failure of the State to obtain drug testing of deceased's blood as the State had agreed. The facts in this case show the State did indicate it would test the victim's blood, but shortly before trial it was discovered that the medical examiner's office had destroyed all but one vial of the blood. A test was performed as to the presence of PCP and the results were negative. However, no further blood test could be performed. The defendant contends that the blood test would have provided evidence to support his statement that the marijuana they smoked was "laced" with some other drug. The defendant is asking this Court to place itself in a speculative position and grant relief based upon a possibility that there would be exculpatory evidence.

The Supreme Court of the United States states "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law". *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 334, 102 L.Ed.2d 281 (1988). The

defendant has not shown that the State has acted in bad faith. The destruction of the evidence occurred through inadvertence and not bad faith. Therefore, we find no error.

██ Next, appellant contends that there was error in failing to sustain the defendant's motion in limine to prevent the State from contending defendant committed murder to avoid arrest and prosecution for attempted rape. It should be noted that this is not other crimes evidence. The evidence is clear that the defendant, in his own statement, believed that the deceased would report an attempted rape. Therefore, the State properly argued the belief by the defendant that a report would be made which might be a motive for the murder. The State, in this instance, would have a liberal right of free speech as to such motive. *McCaulley v. State*, 750 P.2d 1124 (Okl.Cr.1988). Therefore, we find no merit to this proposition of error.

██ The fifth proposition of error is the State improperly commented on appellant's right to silence. The law is clear that counsel cannot comment on a person's silence. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). *See also Hanf v. State*, 560 P.2d 207 (Okl.Cr.1977). The comment that was made in this particular case "because he had to go to Lisa's funeral" is not a reference to the appellant's privilege against self-incrimination. This comment was based upon evidence of appellant's statements to the police. In this case, the comment was on pre-arrest silence.' Therefore, there would be no error.

██ Next, appellant states that the trial court erred by allowing an "expert witness" called by the State to testify regarding blood splatters found at the scene of the crime. This Court has recognized and adopted blood splatter evidence as admissible. *Farris v. State*, 670 P.2d 995 (Okl.Cr.1983). The evidence as submitted by the expert at trial did not overstep the bounds of opinion testimony. The defendant places emphasis on statements made during closing argument. The District Attorney did make comments during closing argument as to the blood splatter

evidence. The only question is did the testimony go too far or were the comments by the District Attorney egregious. We do not find that the comments by the District Attorney went too far and, therefore, we find no reversible error.

■ The seventh proposition of error is the trial court erred by allowing evidence of other crimes to be introduced without proper notice of the State's intent to offer such evidence. The defendant contends that he was not given proper notice of the State's intention to introduce other crimes evidence as required by this Court. *Burks v. State,* 594 P.2d 771 (Okl.Cr.1979). This notice is to prevent surprise. *Drew v. State,* 771 P.2d 224 (Okl.Cr.1989). The facts in this case show there was no surprise because the evidence that is complained of came directly from the defendant's confession. The defendant in his statement indicated that he feared going to prison upon a pending burglary charge and that the victim would report an attempted rape. These crimes do not fall within the bounds of a *Burks* notice. They rather go to motive. *Peters v. State,* 727 P.2d 1386 (Okl.Cr.1986). Therefore, this proposition is without merit.

■ The next alleged error has to do with the trial court allowing the State to offer incompetent or prejudicial evidence. Such evidence is that the defendant was likely to commit future acts of violence and would constitute a continuing threat to society. The jury in this case did not find this aggravator but only the aggravator of especially heinous, atrocious or cruel. The defendant complains that the court improperly admitted testimony of a police officer and a District Attorney investigator relating to unadjudicated crimes. These had to do with (1) an unadjudicated lewd molestation incident involving a twelve-year old girl; (2) an incident where the defendant shot out store windows of a former employer; and (3) a threatening letter the defendant wrote to a former business partner.

This Court has heretofore held that when you consider the continuing threat aggravator, the State may introduce any relevant evidence including "evidence from the crime itself ..., evidence of other crimes ..., admissions by the defendant of unadjudicated offenses ..., or any other relevant evidence." *VanWoundenberg v. State,* 720 P.2d 328 (Okl. Cr.1986), *cert. denied,* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986). There was no error as the evidence was properly admitted under *VanWoundenberg.* In addition, the aggravator was not even found by the jury. Therefore, this proposition is without merit.

■ In proposition nine, the defendant complains the trial court erred by failing to allow the jury to hear an audio tape of the defendant's confession after the jury had made a request to hear the tape. The jury, after only a few minutes deliberation, sent a note asking to be allowed to have a copy of the tape of defendant's statement, a tape recorder or a transcript of defendant's statement or both. The State objected saying that since they did not have the opportunity to cross-examine the defendant, this would unduly emphasize his version of what happened in the case without an opportunity to cross-examine the defendant. The defense requested that the jury be brought back into open court to have a hearing to determine if the tape was needed for continued deliberations and if so, have the tape played in open court. The trial court refused this request. *Martin v. State,* 674 P.2d 37 (Okl.Cr.1983). This Court has made it clear the replaying of testimony or a statement is generally a matter of discretion with the trial court. *McDade v. State,* 752 P.2d 827 (Okl.Cr.1988). We have further held that unless an abuse of discretion occurs, we will not reverse the trial court. *Stewart v. State,* 751 P.2d 745 (Okl.Cr.1988); *Givens v. State,* 705 P.2d 1139 (Okl.Cr.1985). We do not see an abuse of discretion in this matter. The tape was introduced in this case as an exhibit and not the actual testimony of the defendant. Based upon the fact that this was an exhibit, the court has discretion in submitting exhibits to the jury. *Duvall v. State,* 780 P.2d 1178 (Okl.Cr.1989). Therefore, we find this proposition of error to be without merit.

■ The tenth proposition of error by appellant is the court erred by allowing the jury to view photographs that were prejudicial and inflammatory. The photographs

were called gruesome due to "spreading" of the wounds by artificial means. The exhibits in question were Exhibits 64 through 70. Only one of these photographs has any evidence that anyone was holding the wound or spreading the wound apart. The photographs do graphically depict the extent of the injuries, but after examination we do not find there was any abuse of discretion as it relates to such photographs and, therefore, the proposition is without merit. *Stout v. State,* 693 P.2d 617 (Okl.Cr.1984). The condition of the body was gruesome and the photos are a fair depiction of the deceased.

■ Defendant for the eleventh proposition of error indicates prosecutorial misconduct due to repeated instances of misconduct throughout the trial causing prejudice to defendant. We will try to separate these based upon first and second stage since the proposition spans the entire trial. Defendant contends in the first stage of the trial that the prosecutor was improper by injecting himself and the jurors into the position of deceased's husband, also expressing his personal opinion, commenting on the conduct of defense counsel and saying he wished the killing occurred in the twinkling of an eye. We have examined these comments in context and due to the fact that the defendant had confessed, we cannot find that these comments prejudiced the jury into rendering a verdict of guilty. Therefore, we find no error.

As it relates to the second stage closing argument, the following items are noted: (1) calling Stanley a little girl and references to her small size; (2) attempting to align the jury with the District Attorney and police; (3) comments about defense counsel; (4) discounting Hogan's mitigating evidence; (5) Hogan's lack of remorse; (6) referring to the life Hogan will lead in prison while Stanley "lies cold in her grave"; (7) advising the jury Hogan will kill again; and (8) appealing for sympathy for the victim. Most of these comments were objected to by defense counsel. Some of these comments were true, as the size of the deceased, which was invited by defense counsel's argument. The State noted the *defendant's past good acts do not outweigh what "he's capable of today"*. This comment was not met with objection at the

trial and does appear to be a proper comment on the evidence. In any heated contest, both sides are going to be zealous as to their remarks. The United States Supreme Court has indicated that appellate courts must look at the trial as a whole and not look to episodes in isolation. *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). This Court has previously allowed the comments on the jury's duty, *Moore v. State,* 736 P.2d 161 (Okl.Cr.1987); also, an interjection of opinion based upon facts and evidence, *Carol v. State,* 756 P.2d 614 (Okl. Cr.1988).

■ This Court has examined the comments made by the prosecutor and taken in isolation some of these could be questionable. As the Supreme Court has told us, we must look at these in a proper perspective based upon the entire trial. *United States v. Young, supra.* We also have looked at the error as invited error, that is, when you look at the comments by both sides, it explains sometimes why the prosecution made the comments that they did make. Based upon our review, we feel that the error, if any, was therefore invited. *Teafatiller v. State,* 739 P.2d 1009 (Okl.Cr.1987). We do not find prosecutorial misconduct in this matter. Therefore, the proposition is without merit.

## MANDATORY SENTENCE REVIEW

■ This Court must, under the provisions of 21 O.S.Supp.1985, § 701.13, determine whether (1) the sentence was imposed under the influence of passion, prejudice or other arbitrary factor, and (2) whether the evidence supports the finding of the statutory aggravating circumstance. The facts as to evidence supporting the aggravating circumstances is abundantly clear. The death itself was exceedingly gruesome. There was clear evidence of a struggle, continued stabbings and a criminal episode that was long lasting. The defendant clearly tried to cover his tracks to the crime. It is clear that the victim remained in an upright position at least during part of the stabbing. Therefore, the victim was fully aware of what was happening and her impending fate. This clearly shows the aggravating circumstance of especially heinous, atrocious or cruel. The Court

has reviewed the evidence herein as set forth under the propositions of error and we do not find that the sentence was imposed under the influence of passion, prejudice, or other arbitrary factor. In determining this factor, we have reviewed all of the facts and the evidence in the case.

The defendant in this trial was represented by an exceedingly competent criminal defense team. Their representation was more than adequate when you consider the overwhelming evidence confronting the attorneys. In the mitigation stage of this trial, the defense put on nine witnesses who testified to the fact that the defendant had a happy family, showed attention to his children, and was a loving father. The defense showed the defendant acted like a father, volunteered to be a helper in the jail when incarcerated and worked with a minister while he was incarcerated, had lent money to family members, and was a good worker. There was testimony the defendant was not a violent person, that as a gift he had even painted a house as a surprise for a family member. Testimony further showed the defendant was active in his church, and several witnesses testified the defendant's life was worth saving. Even with this, the jury in weighing the mitigating evidence versus the aggravating evidence found the aggravator to prevail and found and imposed the death penalty.

It appears clear that there is ample evidence for the jury's finding. The only passion or prejudice would be remarks made by the State's attorney. These have been analyzed above and although questionable in some instances, when looked at in its full context, we do not find error in that regard. The facts clearly support the factor as it relates to the statutory aggravating circumstance. It is clear from the evidence that there were numerous stab wounds and that the deceased was fully aware for some period of time prior to her death that her death was, in fact, imminent. This clearly sustains the finding of especially heinous, atrocious or cruel.

The State, in this instance, tried the case on three aggravating factors: (1) especially heinous, atrocious or cruel; (2) continuing threat to society; and (3) purpose of avoiding or preventing a lawful arrest or prosecution. The jury on the returning of their verdict found only the aggravator of heinous, atrocious or cruel.

The facts clearly show the crime was perpetrated in a manner that was especially heinous, atrocious or cruel, and further, the review of this matter shows that the aggravating factor clearly outweighed the mitigating evidence.

## DECISION

The finding by the jury that the defendant Kenneth Eugene Hogan was guilty of the crime of murder, first degree, is therefore **AFFIRMED** and in accordance with the jury's verdict that set punishment at death by lethal injection, the verdict is **AFFIRMED.**

LUMPKIN, P.J., and LANE and STRUBHAR, JJ., concur.

CHAPEL, J., dissents.

CHAPEL, Judge, dissenting:

I find that the trial court committed reversible error when it failed to instruct the jury on the lesser-included offense of Manslaughter in the First Degree. For that reason, Hogan's Judgment and Sentence should be reversed and remanded for a new trial. In addition, I find that the trial court erred in allowing the State to introduce evidence of unadjudicated offenses during the second stage of trial to prove the aggravating circumstance of continuing threat. For these reasons, I dissent.

At trial, Hogan requested the jury be instructed on the lesser-included offense of Manslaughter in the First Degree. Hogan contends his account of the murder of Lisa Stanley, as contained in his confession, warranted such an instruction. After extensive argument by trial counsel and the district attorney, the trial court refused to provide the instructions on the lesser-included offense. Curiously, however, the trial court did provide the jury with self-defense instructions based apparently on the evidence in Hogan's confession that Hogan's hand was severely cut and that the victim may have

inflicted that wound.[1] In my opinion, the trial court's refusal to provide the requested instructions on the lesser-included offense of manslaughter constitutes reversible error.

The trial court should instruct the jury on every degree of homicide where there is some evidence justifying an instruction on the lesser-included offense. *See Fowler v. State,* 779 P.2d 580, 585 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 775 (1990); *Lamb v. State,* 767 P.2d 887 (Okl.Cr.1988); *Lee v. State,* 700 P.2d 1017, 1019 (Okl.Cr.1985). When there is a doubt as to whether the instruction is warranted, the trial court should resolve that doubt in favor of giving the instruction. *Jones v. State,* 650 P.2d 892, 893 (Okl.Cr. 1982); *Tarter v. State,* 359 P.2d 596 (Okl.Cr. 1961).

Manslaughter in the First Degree is defined as a homicide "perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constituted excusable or justifiable homicide." 21 O.S.1981, § 711(2). To warrant manslaughter instructions Hogan's confession must reasonably suggest he committed the murder in the heat of passion and without an intent to kill.

The State's key evidence against Hogan was his confession and it is this confession that provides "some evidence" sufficient to warrant a manslaughter instruction. In his confession Hogan stated that after he and Stanley argued and after he kicked in the bathroom door, Hogan tried to leave Stanley's home. Hogan said that as he was putting on his coat, Stanley returned from the kitchen and, without a word, "pushed" a knife at him. Hogan grabbed the knife but Stanley pulled the knife back inflicting a deep, painful wound on Hogan's hand. Stanley swung at Hogan again and he grabbed the knife from her. When Stanley ran back to the kitchen Hogan thought she was going to get another knife. Then, Hogan said, he

killed Stanley by stabbing her with the knife she had used to cut him.

During his confession, Hogan maintained that he did not mean to hurt Stanley. In describing the stabbing, Hogan spoke in the third person saying "It was stabbing her and I couldn't stop him." (App.Br.Ex. A at 4) Hogan stated that he did not realize he had killed Stanley until the next day.

To support a manslaughter instruction, the evidence must suggest the act was done in the heat of passion. In Oklahoma, the passion must be so great as to render the mind "'incapable of forming a design to effect death ...'" *Allen v. State,* 821 P.2d 371, 374 (Okl.Cr.1991); LaFave & Scott, *Substantive Criminal Law* § 7.10. The elements of heat of passion are: (1) adequate provocation; (2) a passion or emotion such as fear, terror, anger, rage or resentment; (3) homicide occurred while the passion still existed and before a reasonable opportunity for the passion to cool; and (4) a causal connection between the provocation, passion and homicide. *Allen,* 821 P.2d at 374. *See* Oklahoma Uniform Jury Instructions–CR 456.

Personal violence or aggression by the deceased of a sufficiently violent nature may be sufficient provocation. "It is the general rule that passion resulting from fright or terror may be sufficient to reduce a homicide from murder to manslaughter and such a killing may be closely akin to a killing in self-defense." *Wood v. State,* 486 P.2d 750, 752 (Okl.Cr.1971). A homicide may be reduced from murder to manslaughter when the defendant "believed that he was in great danger, even if he was not warranted in such belief or where the slayer although acting in self-defense was not himself free from blame." 486 P.2d at 752.

In *Williams v. State,* 513 P.2d 335 (Okl.Cr. 1973), the defendant shot his wife seven times. Defendant testified he thought his wife had a butcher knife and was afraid she would hurt him, so he shot her. As to why he shot her more than once, defendant said "'I just went blank and just stood there just pumping that gun ...'" *Id.* 337. Although

---

1. In Hogan's confession, he stated that Stanley stabbed his hand inflicting a deep and painful wound. The State argued at trial that Hogan inflicted the wound himself when he was stabbing Stanley.

the defendant stated he did not intend to use the gun on his wife, a police officer testified that after the incident defendant indicated no remorse and said he was glad it was over. The Court found this evidence reasonably suggested manslaughter stating:

> There were no other witnesses to the homicide other than defendant. The jury might reasonably interpret the evidence to show that the initial firing of the gun was caused by a sudden and unexpected attempt to attack defendant with a pair of scissors and fired by the defendant while in the heat of passion. The lack of premeditated design to effect death should have been submitted to the jury by a proper manslaughter in the first degree instruction.

513 P.2d at 338–339.

Here, Hogan contends he was provoked by Stanley's threats and by her stabbing his hand. Hogan stated the stab wound hurt, and, after he grabbed the knife away from Stanley, he thought she was returning to the kitchen to get another knife. The stab wounds Hogan sustained were significant and required surgery.

The trial court gave some credence to Hogan's claim that Stanley stabbed him because the trial court found the evidence was sufficient to instruct the jury on self-defense. Although a manslaughter instruction is no longer required whenever the trial court instructs the jury on self-defense, *Walton v. State*, 744 P.2d 977, 978–979 (Okl.Cr.1987), the fact that the trial court granted an instruction on self-defense indicates that the trial court found some evidence showing Stanley attacked Hogan. This finding weighs in favor of finding adequate evidence of provocation to allow the jury to address the issue of whether Hogan committed murder or manslaughter.

In addition, to receive a manslaughter instruction, there must be some evidence that Hogan lacked an intent to kill. Again Hogan's confession—the State's key piece of evidence—provides "some evidence" sufficient to warrant the giving of a manslaughter instruction. Hogan made the following statements in his confession: "I just went over to be friends, I didn't come over there to do any

harm and now I've got to pay ... it's not fair," (App.Br.Ex. A at 4); "I didn't even realize that I'd killed her until the next day, all I knew was my hand hurt and she was dead," (App.Br.Ex. A at 4); "I mean I didn't do it on purpose, I can't even sleep at night without waking up ..." (App.Br.Ex. A at 4); "I didn't mean to hurt her," (App.Br.Ex. A at 3); "it was like I wasn't even there ... just somebody else ... it wasn't even me." (App. Br.Ex. A at 4).

Several cases demonstrate that Hogan's declarations that he did not intend to kill Stanley is sufficient to warrant a manslaughter instruction. In *Provo v. State*, 549 P.2d 354 (Okl.Cr.1976), the defendant, during the course of a robbery, killed a store owner. In his statement to the police, the defendant stated he intended to rob the store owner, but not hurt him. *Id.* at 356. The defendant also expressed his hope that the store owner might survive. *Id.* The Court found defendant's statement regarding his intent combined with his desire that the victim live was sufficient to warrant a manslaughter instruction. In *Tarter v. State*, 359 P.2d 596 (Okl. Cr.1961), the defendant shot a man twenty times. After the shooting, defendant said to the victim, who was still alive, "This will teach you to break up my home." *Id.* at 598. Defendant mistakenly believed his wife was having an affair with the victim, and defendant's main defense was he was not guilty by reason of insanity. A police officer testified that, at the time of defendant's arrest, defendant stated he did not want to kill the victim, he " 'only wanted him to suffer as he had suffered.' " *Id.* at 599–600. When the defendant learned the victim had died he exclaimed " 'Oh, my God,' and began to cry." *Id.* at 600. Again, this Court found a manslaughter instruction was warranted. Likewise, Hogan's statements, like the statements of the defendants in *Provo* and *Tarter*, reasonably suggest that Hogan lacked the requisite intent to kill.

As explained above, Hogan's confession presented "some" evidence reasonably suggesting that Hogan committed the offense of first degree manslaughter. It may be that the jury would have found Hogan to be guilty of First Degree Murder even if they had

been provided with a manslaughter instruction. However, that is not the test. The test is whether there is *some* evidence reasonably suggesting that the lesser-included offense instructions are warranted. Hogan's confession clearly provides *some* evidence of manslaughter. The trial committed reversible error in failing to provide the manslaughter instructions.

Further, I would like to reiterate by objection to the use of unadjudicated offenses to support the continuing threat aggravating circumstance. *See Paxton v. State*, 867 P.2d 1309 (Okl.Cr.1994). In my opinion, both the Oklahoma and the United States Constitutions prohibit the use of this evidence at sentencing, despite the fact that it may be relevant. Our Constitutions prohibit the infliction of cruel and unusual punishment and afford all persons due process of law. The admission of unadjudicated offenses at the sentencing trial violates both Constitutional provisions. *See* Steven P. Smith, *Unreliable and Prejudicial: The Use of Extraneous Unadjudicated Offenses in the Penalty Phase of Capital Trials*, 93 Colum.L.Rev. 1249 (1993); *cf. State v. Bartholomew*, 101 Wash.2d 631, 683 P.2d 1079 (1984). I would therefore also grant relief to Hogan based on the use of unadjudicated offenses to support the continuing threat aggravating circumstance.[2]

### ORDER DENYING REHEARING AND DIRECTING ISSUANCE OF MANDATE

Petitioner, Kenneth Eugene Hogan, has filed his Petition for Rehearing which requests this Court to grant a rehearing in *Hogan v. State*, 877 P.2d 1157, 65 OBJ 2077 (Okl.Cr.1994). Appellant alleges that this Court has overlooked certain questions decisive of the case and duly submitted in reference to two propositions. These propositions are as follows, to-wit:

I. The Court's Decision Regarding "Proposition I—The Trial Court Erred in Refusing to Instruct the Jury With the Defen-

dant's Requested Instruction Regarding the Crime of Manslaughter in the First Degree" Is In Conflict With Controlling Authority That Was Not Called to the Attention of the Court.

II. Appellant's Death Sentence Should be Vacated Because the Aggravating Circumstance "Heinous, Atrocious, or Cruel" is Unconstitutionally Vague on Its Face and As Construed by This Court, and the Corresponding Jury Instructions Are Unconstitutionally Broad.

As it relates to Proposition I, appellant asserts that the trial court's failure to instruct the jury regarding the crime of manslaughter in the first degree as a lesser included offense was error and cites in regards to this a case that was not cited in the original brief. *Schad v. Arizona*, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991); further, the case of *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). Appellant's position from the cited cases is that failure to give the lesser included instruction did therefore not allow a "third option" to be given to the jury when the evidence in the case supported a lesser included offense.

Appellant misreads the holding of the United States Supreme Court. The Court clearly held that the lesser included offense was not required when the evidence did not justify such instruction. It should be noted in this case that the jury was given a lesser included instruction as it related to self-defense and this clearly would be a "third option" for the jury. *Beck* held unconstitutional an Alabama statute that prohibited lesser included offense instructions in capital cases. That is not the case before us, the jury was instructed and given a lesser included offense option. Therefore, the requirements of *Beck* and *Schad* were met. *Schad* at ——, 111 S.Ct. at 2504.

■ In the second proposition of error raised in the Petition for Rehearing, appellant again asks this Court to find that the aggravating circumstance "heinous, atro-

---

2. The State introduced evidence of several unadjudicated offenses to support the continuing threat aggravating circumstance. The jury did not find that Hogan posed a continuing threat.

However, relief is still warranted as this evidence may have improperly affected the jury's finding that the murder of Stanley was especially heinous, atrocious and cruel.

cious, or cruel" is unconstitutionally vague on its face. Appellant concedes that this Court has on *numerous* times held that such terms are not unconstitutionally vague but asks this Court to again reassess it prior holdings. This Court will not reassess its prior holdings and is consistent in that we do again make such finding, that the term is not unconstitutionally vague, and again cite previous holdings of this Court to that effect. *Romano v. State,* 847 P.2d 368 (Okl.Cr.1993), *Fisher v. State,* 845 P.2d 1272 (Okl.Cr.1992), and other numerous decisions.

Having examined the appellant's petition and the briefs relating to the Petition for Rehearing and Motion to Stay Mandate, the Court finds that the petitioner's Petition for Rehearing should be, and the same hereby is **DENIED.** The Clerk of this Court is directed to issue the mandate forthwith.

IT IS SO ORDERED.

. /s/ Gary L. Lumpkin
GARY L. LUMPKIN,
PRESIDING JUDGE

/s/ Charles A. Johnson
CHARLES A. JOHNSON,
VICE PRESIDING JUDGE

/s/ James F. Lane
JAMES F. LANE,
JUDGE

/s/ Charles S. Chapel
CHARLES S. CHAPEL,
JUDGE

/s/ Reta M. Strubhar
RETA M. STRUBHAR,
JUDGE